Qin Shi (SBN 226827)
EDGETECH LAW LLP
2225 E. Bayshore Rd. Suite 200
Palo Alto, California 94303-3220
Telephone: (650) 320-1626
Facsimile: (650) 320-1668
qshi@edgetechlaw.com

Attorneys for Plaintiffs
Pontén Spirit Holdings AB and
Jacob Pontén

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISON

PONTÉN SPIRIT HOLDING AB, and
JACOB PONTÉN,

    Plaintiffs,

v.

AUTOMILE, INC., a Delaware Corporation,

    Defendant.

Case No.

**COMPLAINT FOR BREACH OF CONTRACT, BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING, INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE, AND FOR DECLARATORY RELIEF**

**JURY DEMANDED**

Plaintiff Pontén Spirit Holding AB and Jacob Pontén allege for their Complaint as follows:

THE PARTIES

1.    Plaintiff Pontén Spirit Holding AB ("PSH") is a Swedish limited liability

company registered under the laws of the country of Sweden with its principal place of business in Stockholm, Sweden. PSH is a holding company for plaintiff Jacob Pontén, and conducts business, and invests in companies operating in California and elsewhere.

2. Plaintiff Jacob Pontén ("Pontén") is a citizen of the country of Sweden, and the sole owner of PSH. Pontén is a founder and shareholder of defendant Automile, Inc., and a former chief executive, *i.e.*, managing director ("MD"), of Automile AB, a wholly-owned Swedish subsidiary of Automile Inc.

3. PSH is informed and believes, and thereupon alleges, that defendant Automile Inc. is a company organized under the laws of the State of Delaware, with its principal place of business in Palo Alto, California. Automile Inc. is engaged in the business of developing and selling software and hardware products and services to enterprises for the management and tracking of vehicle fleets and assets.

## SUBJECT MATTER JURISDICTION

4. This court has original subject matter jurisdiction over this civil action in accordance with 28 U.S.C. § 1332 because, as set forth in more detail herein, the matter in controversy exceeds the amount of $75,000 exclusive of interest and costs and is between a citizen of the United States and citizens of a foreign state. For purposes of diversity jurisdiction, plaintiff PSH is a legal entity formed under the laws of Sweden, and plaintiff Pontén is a citizen of Sweden. Defendant Automile Inc. is a corporation formed under the laws of Delaware with its principal place of business in Palo Alto, California.

## VENUE AND PERSONAL JURISDICTION

5. Venue of this action in this district is proper pursuant to 28 U.S.C. § 1391(b) (1) & (2) because, as set forth in more detail herein, Automile Inc. resides in Palo Alto, California, and all or a substantial part of the events giving rise to this complaint occurred in this judicial district. Defendant's activities in this state have been, and continue to be, substantial and continuous in that defendant has offices in, and offer its products and services from, Palo Alto, California, and has entered into a number of contracts with PSH and Jacob Pontén, as well as with other investors, which contracts were or are being performed, at least in part, in California.

- 2 -
COMPLAINT FOR BREACH OF CONTRACT, BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING, INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE AND FOR DECL. RELIEF

Case No.

INTRADISTRICT ASSIGNMENT

6. Assignment to the San Jose Division is proper under Local Rule 3-2 because the action arises in the county of Santa Clara.

STATEMENT OF THE CASE

7. Pontén is a founder of, and an executive as well as investor in, start-up technology companies in Sweden and in California. In 2014, Pontén joined as a co-founder in a Swedish technology company Automile AB, which had been formed a year earlier by co-founders Jens Nylander and Felix Rosén. In 2016, Automile AB underwent a reorganization *via* certain stock exchange transactions and became a wholly-owned subsidiary of a Delaware corporation, Automile Inc. Pontén, Nylander, and Rosén are documented as co-founders of Automile Inc. in its corporate formation documents.

8. Pontén served in the position of the official chief executive of Automile AB, *i.e.*, MD, from March 20, 2015 to December 5, 2017, and was so identified in the filings with the Swedish Company Registration Office. Pontén's employment with Automile AB is documented in an employment agreement dated September 7, 2016, which refers to Pontén's title as "Managing Director Europe" ("MDE") and acknowledges his service in the organization dating back to 2014. That employment agreement is the sole employment agreement between Pontén and any Automile company, including the Automile parent or any subsidiary companies. The agreement provides that Pontén as the MDE of Automile AB reports to the CEO of the company. Co-founder Nylander has served as CEO of the parent company Automile Inc. since 2016.

9. As a co-founder, Pontén was allocated 2,907,000 shares of common stock of Automile Inc. pursuant to a Stock Exchange Agreement dated July 12, 2016, which shares were held by PSH. After several subsequent transactions, PSH held 2,746,391 shares as of October, 2017. PSH continuously owned these shares until defendant Automile Inc. wrongfully "repurchased" 702,525 of the shares on July 5, 2018.

10. Automile Inc. sought to raise additional capital to enable the operation and growth of its business in October, 2017; and, in doing so, it enticed a number of institutional and private investors ("New Investors") to purchase its Series B Preferred Stock. Each investor entered into

- 3 -
COMPLAINT FOR BREACH OF CONTRACT, BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING, INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE AND FOR DECL. RELIEF

Case No.

a Stock Purchase Agreement with Automile Inc.

11. On October 10, 2017, the Amended and Restated Right of First Refusal and Co-Sale Agreement ("the Co-Sale Agreement") was executed by Automile Inc., the Founders, and the Stockholders, including the New Investors, of Automile, Inc.  The Co-Sale Agreement provides, *inter alia*, as follows: "A condition to the New Investors' obligations under the Purchase Agreement is that the Company, the Founders, the Existing Preferred Holders and the New Investors enter into [the Co-Sale Agreement] in order to provide the Investors the opportunity to purchase and/or participate, upon the terms and conditions set forth in [the] Agreement, in subsequent sales by the Key Holders of Shares of the Company's common stock." "Key Holders" is defined therein as the Founders and the Common Holders (other holders of the Company's common stock).  A copy of the Co-Sale Agreement is attached hereto as Exhibit A and incorporated herein.

12. The Co-Sale Agreement provides the Investors with a purchase option (the "Investor Option") under Sec. 2.2 thereof:  "If, during the Vesting Period, a Founder's Service terminates for any reason, then the Investors or their permitted assignees *shall* have an option to purchase such Founder's Unvested Shares." (*emphasis added*).  The term "Unvested Shares" is defined in Sec. 2.1 of the Co-Sale Agreement under the title "Founder Vesting."

13. Section 2.2 of the Co-Sale Agreement also provides that, upon termination of a Founder's Service, Automile Inc. "*shall* deliver to each Investor a written notice ("the Option Notice") stating the number of Unvested Shares subject to the Investor Option and the purchase price applicable to such Unvested Shares."  (e*mphasis added.)*

14. In early November 2017, Nylander, who was then resident of Palo Alto, California as CEO of Automile Inc., expressed to Pontén a desire to leave the California offices of Automile Inc. and to return to Sweden, where Pontén was then resident and the chief executive (MD/MDE) of Automile AB.  In mid-November 2017, Nylander conveyed to Pontén that the Board of Directors had decided to appoint Nylander as MD of Automile AB.  Nylander relocated himself back to Sweden in and around the third week of November, 2017.  On November 27, 2017, Pontén and Nylander met in person, where Pontén expressed his dismay

over the possible impending change of MD.  On November 28 and 29, Nylander demanded that Pontén tender his resignation and provide a "written notice of termination" to the company.  Pontén did not respond to that demand.  No resignation or notice of termination was given by Pontén to the company.  On December 1, 2017, Nylander unilaterally identified himself in a public filing with the Swedish Company Registration Office as the new MD for Automile AB.  On December 5, 2017, the official records of the Swedish Company Registration Office showed this change, eliminating Jacob Pontén's position with the company.

15. In this manner, without any cause whatsoever, Pontén was removed by Nylander on behalf of the company from the position of MD (MDE) of Automile AB, effectively cancelling or terminating Pontén's sole employment agreement with the company.  Pontén was later provided an "effective termination date" of June 19, 2018 as his termination compensation in Sweden was calculated, and he was expressly relieved of any work duties after January 31, 2018.

16. "Cause" for termination is defined and enumerated in Sec. 2.2 of the Co-Sale Agreement.  The company never identified any cause for terminating Pontén's employment as MD/MDE.  Plaintiffs are informed and believe, and thereupon allege, that Pontén was dismissed from the company without cause so that Nylander could take over the position of MD upon his return to Sweden.

17. On July 5, 2018, Automile Inc., through its CEO Jens Nylander, delivered a letter to PSH declaring that Automile Inc. had repurchased 702,525 of PSH's "unvested shares" for the sum of $702.53.  Automile Inc. asserted that it took this step pursuant to a "Stock Restriction Agreement" dated July 12, 2016 between PSH and Automile Inc.  The letter made no reference to the Co-Sale Agreement of October 10, 2017, which governs the rights and obligations of all parties to that agreement in the event a "Founder's Service terminates for any reason."  The Co-Sale Agreement expressly states that "the Company, the Founders, the Existing Preferred Holders and the New Investors shall be bound by the provisions hereof as the sole agreement of the Company, the Founders, the Existing Preferred Holders and the New Investors with respect to the subject matter hereof."

18. The Co-Sale Agreement does not allow for a "repurchase" of a Founder's unvested shares by the company when a Founder's services are terminated. Rather, it requires that Automile Inc. "deliver to each Investor a written notice ("the Option Notice") stating the number of Unvested Shares subject to the Investor Option and the purchase price applicable to such Unvested Shares" whenever "a Founder's Service terminates for any reason."

19. By its purported "repurchasing" of 702,525 shares owned by PSH without plaintiff's consent and without notice to the Investors as required by the Investor Option, defendant Automile Inc. breached its obligations under the Co-Sale Agreement. Due to this breach, the Investors were precluded from purchasing, and plaintiffs were unable to sell, these shares in an orderly process as prescribed by the Co-Sale Agreement.

20. The Co-Sale Agreement provides that, "[i]f the Founder is terminated without Cause, then the purchase price applicable to such Unvested Shares shall be the fair market value of such shares." Pursuant to the terms of the Co-Sale Agreement the Investors had the right to purchase plaintiffs' unvested shares at the fair market value, which was at least $2.00 per share in July 2018.

21. In and around mid-June, 2018, Pontén was approached by Dawn Capital ("Dawn"), one of the institutional investors of the Series B round, inquiring about the possibility of Pontén selling the shares in Automile Inc. owned by PSH. Dawn expressed an interest in purchasing—and Pontén indicated a desire to sell—100% of the shares owned by PSH at a price of $2.00 per share. On June 24, 2018, in an email correspondence to Pontén, Dawn stated: "We confirm that our understanding is also that Pontén Spirit Holding AB owns 2 746 391 ordinary shares. [We] understand [] the price per share of the purchase as $2.00 (200 cents) for a total consideration of US$ 5,492,782.00. Based on these broad principles we can then instruct our lawyers to prepare the documents."

22. On July 2, 2018 Dawn again wrote to Pontén indicating that they "have received the first draft of the purchase agreement from the lawyers." All transaction papers including the purchase agreement and ancillary documents were being prepared and the company was contacted as the sale was moving ahead – until July 5, 2018 when Nylander delivered to Pontén

- 6 -
COMPLAINT FOR BREACH OF CONTRACT, BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING, INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE AND FOR DECL. RELIEF

Case No.

defendant's letter to purportedly "repurchase" 702,525 shares.

23. On July 12, 2018 Dawn wrote to Pontén: "We have been in touch with the company to discuss the mechanics of the transaction with them. They tell us there is a difference in views on the number of shares held and we have been told by them to put this on hold until the situation is clarified. As they need to approve and handle the formalities of the transfer, this is the only option. The purchase document and ancillary documents are all drafted now, so we can pick up again very quickly afterwards when it is all sorted out."

24. In the ensuing days, the company through Nylander conveyed to plaintiffs that "no offering [is] on the table for [PSH] shares any longer" and, Nylander states explicitly: "I have recommended all buyers . . . to not continue discussion [*sic*] a potential closing of a deal due to the uncertainty of [the] question [on repurchased shares]."

25. On August 9, 2018, Dawn in an email update to Pontén wrote: "we are still interested in a transaction but our hands are tied until we get the green light from the company."

26. Pontén and PSH are informed and believe, and on that basis allege that, had the required notice to investors been delivered by defendant and defendant provided the required assistance, the PSH shares that were subject to the Investor Option, as well as the rest of PSH shares, would have been purchased by Investors at the fair market value of at least $2.00 per share.

27. Automile Inc.'s unilateral wrongful action in "repurchasing" the unvested PSH shares for $0.001/share in violation of the terms of the Co-Sale Agreement has deprived PSH of the opportunity to sell its shares to the Investors.

28. Plaintiff also are informed and believe that Automile Inc.'s actions surrounding the termination of Pontén and the "repurchase" of plaintiffs' unvested shares have created an atmosphere of uncertainty, dissonance and corporate mismanagement that has a negative effect on how the Investors view the company and/or the desirability of company shares.

29. Defendant's actions have damaged PSH and Pontén in an amount exceeding $1,400,000 because they were deprived of their right to sell at a fair market price the 702,525 "unvested shares" that Automile Inc. wrongfully acquired.

- 7 -
COMPLAINT FOR BREACH OF CONTRACT, BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING, INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE AND FOR DECL. RELIEF

Case No.

30. Defendant's actions have further damaged PSH and Pontén in an amount exceeding $5,000,000 because they were deprived of their prospective economic advantage from a pending sale of 100% of PSH shares.

## FIRST CLAIM FOR RELIEF
### (BREACH OF CONTRACT)

31. Plaintiffs incorporate by reference the allegations contained above in Paragraphs 1 through 30 as if fully set forth in this paragraph.

32. Plaintiffs did all, or substantially all, of the material things that the Co-Sale Agreement required them to do, or they were excused from doing those things.

33. Automile Inc. breached the Co-Sale Agreement in several respects, none of which breaches has been cured, waived or excused.

34. Pontén was terminated from his position as MD/MDE without Cause, as that term is defined in the Co-Sale Agreement. Section 2.2 (a) of the Co-Sale Agreement provides that "[i]f the Founder is terminated without Cause, then the purchase price applicable to such Unvested Shares shall be the fair market value of such shares." The section further provides that the "fair market value of such shares [is to be] determined by the Company's Board of Directors (the "Board") in good faith." Automile Inc. breached this provision of the contract by failing to determine the fair market value of PSH's shares.

35. Section 2.2 (b) provides that Automile "shall deliver to each Investor a written notice (the "Option Notice") stating the number of Unvested Shares subject to the Investor Option and the purchase price applicable to such Unvested Shares." The purpose of this provision is to allow for an orderly sale of PSH's shares to Investors at the correct price and based on the accurate number of shares. Automile Inc. breached this provision of the agreement when it failed to give the required notice to Investors.

36. By "repurchasing" 702,525 of PSH shares at a price of $0.001/share instead of making the determinations regarding the fair market price for the shares and the number of shares available, and by failing to give notice to Investors regarding the Investor Option to repurchase, all as required by the Co-Sale Agreement, Automile Inc. breached the provisions of Section 2 and deprived plaintiffs of the ability to sell these shares to Investors at fair market

- 8 -
COMPLAINT FOR BREACH OF CONTRACT, BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING, INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE AND FOR DECL. RELIEF

Case No.

value.

37. Section 5 of the Co-Sale Agreement provides that the "Company agrees to cooperate with the parties in their enforcement of the terms of this Agreement, to inform the Key Holders and Investors of any breach hereof (to the extent the Company has knowledge thereof) and to use reasonable efforts to assist the Key Holders and Investors in the exercise of their rights and the performance of their obligations hereunder." Automile breached this provision of the Agreement by failing to assist plaintiffs in exercising their right to sell 702,525 shares to Investors at the fair market price pursuant to the Investor Option to repurchase.

38. As a direct and proximate result of these breaches PSH incurred damages in an amount consisting, at a minimum, of the difference between the $702.53 Automile Inc. paid to PSH in July 2018 and the amount PSH would have realized by selling 702,525 of PSH shares to Investors pursuant to the terms of the Co-Sale Agreement. PSH also incurred legal fees and costs in connection with its efforts to enforce defendant's obligations under the Co-Sale Agreement and will continue to incur such fees and costs, the exact amount of all such damages, fees and costs to be proved at trial.

SECOND CLAIM FOR RELIEF
(BREACH OF THE COVENANT OF
GOOD FAITH AND FAIR DEALING)

39. Plaintiffs incorporate by reference the allegations contained above in Paragraphs 1 through 38 as if fully set forth in this paragraph.

40. Implied in each contract is a covenant that each party to the contract will act in good faith and deal fairly with the other and that it will do nothing to interfere with the rights of the other party to receive the benefits of the contract. This covenant is referred to as "the implied covenant of good faith and fair dealing." It exists to prevent one contracting party from unfairly frustrating the other party's right to receive the benefits of the agreement actually made.

41. The Co-Sale Agreement includes an implied covenant of good faith and fair dealing. *Inter alia*, this covenant protects plaintiffs' rights to receive the benefit of a sale of PSH's unvested shares to Investors pursuant to the terms set forth in Section 2 of the Agreement.

42. Automile breached this covenant when it wrongfully and without plaintiff's

- 9 -
COMPLAINT FOR BREACH OF CONTRACT, BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING, INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE AND FOR DECL. RELIEF

Case No.

consent "repurchased" 702,525 shares owned by PSH upon the termination of Pontén's services to Automile AB instead of following the procedures mandated by Section 2 of the Co-Sale Agreement, thereby making it impossible for PSH to sell these shares to Investors at the then prevailing fair market price.

43. By "repurchasing" the 702,525 shares, and depriving plaintiffs of control over the shares, Defendant frustrated the purpose of Section 2 of the Co-Sale Agreement, which is to enable Founders to sell their shares at fair market value to Investors and to enable Investors to purchase such shares at fair market value in the event of a founder's without-cause termination.

44. The Co-Sale Agreement expressly recites Automile Inc.'s duty to exercise good faith and fair dealing when a Founder's services are terminated. It provides, in Section 2.2(a):

> "If the Founder's Service terminates for any reason other than a termination without Cause (as defined below), then the purchase price applicable to such Unvested Shares shall be the lower of the fair market value of such shares, as determined by the Company's Board of Directors (the "Board") *in good faith*, or the original purchase price for such shares. If the Founder is terminated without Cause, then the purchase price applicable to such Unvested Shares shall be the fair market value of such shares." In the same Section, the Co-Sale Agreement further provides that the "determination as to whether a Founder has been terminated for Cause shall be made in *good faith*." (*Emphasis added*.)

45. Automile breached this covenant of good faith and fair dealing when it failed to make in good faith a determination (1) of whether Pontén was "terminated for Cause" and (2) of the fair market value of the shares owned by PSH. Rather than make these determinations as required by the Co-Sale Agreement, Automile Inc. acted as if the Co-Sale Agreement did not exist at all and did not govern the rights of plaintiffs and the obligations of itself in the event of Pontén's termination.

46. Automile Inc. also breached the covenant of good faith and fair dealing when it prepared, and required Pontén to sign, the termination memorandum. Plaintiffs are informed and believe, and thereupon alleged, that when it prepared this memorandum Automile Inc. intended

- 10 -
COMPLAINT FOR BREACH OF CONTRACT, BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING, INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE AND FOR DECL. RELIEF

Case No.

to use it to deprive plaintiffs of their rights under the Co-Sale Agreement.

47. Under the provisions of Section 5 of the Co-Sale Agreement Automile Inc. assumed the obligation to "assist the Key Holders [which include plaintiffs] and Investors in the exercise of their rights and the performance of their obligations hereunder." This promise created a special relationship between Automile Inc. and plaintiffs which reinforced and strengthened Automile Inc.'s duty to act in good faith and deal fairly with plaintiffs.

48. Defendant Automile Inc. breached this duty when it failed to assist plaintiffs in exercising their right to sell 702,525 shares to Investors at the fair market price and instead "repurchased" these shares for its own benefit with the intent to deprive plaintiffs of their rights and to enrich defendant.

49. Automile Inc.'s conduct in doing these things was knowing and deliberate. Automile Inc. knew and understood that the Co-Sale Agreement exists and governs its relationship with Pontén and its obligations in the event of the termination of Pontén's services to the company. The Co-Sale Agreement prescribes a specific process for the purchase by Investors of unvested shares of a Founder upon termination of a Founder's services to the company.

50. As a direct and proximate result of these breaches PSH incurred damages in an amount to be proven at trial. Defendant's breach entitles plaintiff to damages consisting of the highest price for which PSH shares could have been sold regardless of the terms of the Co-Sale Agreement. As a further proximate result of defendant's breach of the implied covenant of good faith and fair dealing, plaintiffs have incurred, and will continue to incur, attorneys' fees and related costs in order to obtain the benefits of the Co-Sale Agreement of which it was deprived by Automile Inc.'s failure to assist plaintiffs in exercising their rights under the Co-Sale Agreement.

51. Plaintiffs are entitled to recover compensatory damages, interest thereon, and attorneys' fees and expenses.

- 11 -
COMPLAINT FOR BREACH OF CONTRACT, BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING, INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE AND FOR DECL. RELIEF

Case No.

THIRD CLAIM FOR RELIEF
(INTENTIONAL INTERFERENCE WITH
PROSPECTIVE ECONOMIC ADVANTAGE)

52.     Plaintiffs incorporate by reference the allegations contained above in Paragraphs 1 through 51 as if fully set forth in this paragraph.

53.     Pontén has known Dawn Capital in the start-up world as a venture capital firm investing in early-stage technology companies in Europe and the United States.  Through Automile Inc's latest venture capital round, Pontén worked with Dawn among other investors.  Pontén enjoys a respectful and friendly professional relationship with some of Dawn's general partners.

54.     As set forth above, from early summer through early July of 2018, Pontén and Dawn were working towards closing a sale of 100% of the shares owned by PSH to Dawn at a price of $2.00 per share.  This economic relationship between Pontén and Dawn would have resulted in an economic advantage to Pontén in the amount of $ 5,492,782.00, should the sale be allowed to close.

55.     Dawn and PSH were in contact with defendant Automile Inc. in the process of preparing the transaction papers.  Defendant knew of this economic relationship between Pontén and Dawn and knew specifically of the pending sale of PSH shares by plaintiffs to Dawn.

56.     Defendant Automile Inc. though its CEO Nylander engaged in interference of the pending sale by declaring its purported repurchasing of 702,525 PSH shares in a July 5, 2018 letter to Pontén, thereby breaching the Co-Sale Agreement among all investors, all founders, and Automile Inc.

57.     Automile Inc. though its CEO Nylander further engaged in interference with the pending sale by preventing the investor Dawn from completing the transaction papers, and by insisting to plaintiffs that "no offering [was] on the table [to buy shares] any longer," thereby attempting to pressure plaintiffs into accepting defendant's wrongful repurchase of 702,525 PSH shares.  Contrary to Nylander's claim that the investor no longer offers to buy PSH shares, Dawn continues to be interested in the purchase, and is poised to close the transaction as soon as they "get green light from the company."

- 12 -
COMPLAINT FOR BREACH OF CONTRACT, BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING, INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE AND FOR DECL. RELIEF

Case No.

58. Defendant's actions to interfere with plaintiffs' sale of PSH shares are unlawful and dishonest. Upon information and belief, plaintiffs allege that by engaging in these egregious actions, defendant intended to disrupt the economic relationship between plaintiffs and Dawn regarding the pending sale of PSH shares. Defendant, and on its behalf CEO Nylander, knew that disruption of the economic relationship between plaintiffs and Dawn regarding the pending sale was certain or substantially certain to occur.

59. The disruption of the economic relationship between plaintiffs and Dawn did occur; the pending sale of PSH shares was interfered by defendant.

60. As a result of this disruption, plaintiffs are deprived of their prospective economic advantage in the amount exceeding $5,000,000 from the pending sale of PSH shares.

61. Defendant's wrongful actions to intentionally interfere with the pending sale between PSH and Dawn is a direct and proximate cause of plaintiffs' harm.

62. Plaintiffs are entitled to recover compensatory damages, interest thereupon, and any attorneys fees and expenses.

### FOURTH CLAIM FOR RELIEF
### (FOR DECLARATORY RELIEF AS TO TERMINATION WITHOUT CAUSE)

63. Plaintiffs incorporate by reference the allegations contained above in Paragraphs 1 through 62 as if fully set forth in this paragraph.

64. An actual controversy has arisen and now exists between plaintiffs and defendant concerning their respective rights and duties with respect to Pontén's termination of employment with Automile AB. Pontén contends that he was terminated without Cause. Defendant disputes this contention, and specifically contends that Pontén resigned from Automile of his own accord.

65. A judicial declaration is necessary and appropriate at this time in order that plaintiff Pontén may ascertain the respective rights and duties of plaintiffs and defendant with regard to the damages suffered by Pontén when defendant took the actions alleged above.

66. Plaintiff Pontén is entitled to a declaration that his termination of employment by the company was without Cause, thereby fixing the minimum damages incurred by Pontén at the fair market value of the shares subject to the applicable Co-Sale Agreement.

- 13 -
COMPLAINT FOR BREACH OF CONTRACT, BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING, INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE AND FOR DECL. RELIEF

Case No.

WHEREFORE plaintiffs pray for judgment as follows:

1. for damages in the amount of at least $1,400,000 plus interest under the First and Second Claims for Relief;

2. for damages in the amount of at least $5,000,000 plus interest under the Third Claim for Relief;

3. for a declaratory judgment that Jacob Pontén's termination of employment was without cause;

4. for cost of suit and for attorney's fees; and

5. for such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury.

Dated: August 20, 2018                           EDGETECH LAW LLP


                                        By:    __/Qin Shi/_____
                                               Qin Shi
                                               Attorneys for Plaintiffs
                                               Pontén Spirit Holding AB,
                                               and Jacob Pontén

COMPLAINT FOR BREACH OF CONTRACT, BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING, INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE AND FOR DECL. RELIEF

**Case No.**